Mary SMITH et al., Plaintiffs,

v.

CITY OF MANCHESTER et al., Defendants.

No. CIV–4–78–8.

United States District Court,
E. D. Tennessee,
Winchester Division.

March 14, 1978.

On Motion for Summary Judgment
April 7, 1978.

**32**

Jerry M. Hood and Gary L. Leech, Winchester, Tenn., for plaintiffs.

Claus E. Thormaehlen and H. Thomas Parsons, Rogers & Parsons, Manchester, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The plaintiffs Ms. Mary Smith, Ms. Sharon Levers, and Mr. Michael Lyons, individually, and on behalf of the Holy Spirit Association for the Unification of World Christianity (the Unification Church), applied to this Court without written or oral notice to them or their attorney, for an order restraining temporarily the defendants City of Manchester, Tennessee (Manchester); its mayor Mr. Clyde V. Myers; its aldermen Messrs. Fred Baker, John Bramblett, Loyd McMahon, Jr., and Larry Trimmer; its attorney H. Thomas Parsons, Esq.; its police chief Mr. Jack Robertson; and its recorder Ms. Nina Moffitt, from enforcing against the plaintiffs the Manchester Municipal Code of 1964, §§ 5–301 – 5–305, inclusive, relating to the requirement of permits for charitable solicitations in such municipality. Rule 65(b), Federal Rules of Civil Procedure.

It appears clearly from specific facts shown by the verified complaint herein that immediate and irreparable injury and damage will result to the applicants Ms. Smith, Ms. Levers and Mr. Lyons before the defendants can be heard in opposition to such application, in that the enforcement of such code provisions against such plaintiffs will subject each of them to the deprivation of her or his right to free speech and the freedom of religion, Constitution, First Amendment, and to arrest for violation of such provisions. *Ibid.*, (1). The applicants' attorney verified to this Court by affidavit that he had given notice to the defendant attorney for Manchester of the pendency of such application and the reasons supporting his claim that notice should not be required. *Ibid.*, (2).

The plaintiff Ms. Sharon Levers claims that she applied for the permit required by the aforementioned Code, § 5–301, which was denied; that she then appealed therefor to the governing body of such municipality as allowed by the aforementioned Code, § 5–303, which appeal was disallowed on two occasions; that she was threatened with arrest and removal from the limits of such municipal corporation if she solicited funds and undertook to proselytize persons within such municipality on behalf of the religious establishment of her preference without the required permit, see and *cf.* the aforementioned Code, §§ 5–304, 5–305. Although the plaintiffs Ms. Smith and Mr. Lyons made no such application or took such appeal, in so far as the record herein now reflects, each of them has standing to sue herein. *Freedman v. Maryland* (1965), 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649, 653[1].

A municipality has the power under our constitutional law to enact regulations in the interest of public convenience, *Schneider v. State of New Jersey* (1939), 308 U.S. 147, 160, 60 S.Ct. 146, 150[2], 84 L.Ed. 155; but it is precluded under the Constitution, First and Fourteenth Amendments, from making any law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, *Jones v. City of Opelika* (1942), 316 U.S. 584, 597, 62 S.Ct. 1231, 1239[7], 86 L.Ed. 1691. On its face, the plaintiffs' avowed purpose in soliciting funds and undertaking to proselytize per-

sons upon the streets, sidewalks and other public areas of Manchester appears to be as evangelical as the revival meeting; if so, as a form of the exercise of a form of religious activity, it may be equated under the Constitution, First Amendment, with worship in churches and preaching from pulpits.

The incidental fact that the plaintiffs may solicit contributions for the religious organization in which they are interested, does not remove this form of evangelism from the protection of our Constitution, *Murdock v. Commonwealth of Pennsylvania* (1943), 319 U.S. 105, 110, 63 S.Ct. 870, 873–874[4], 87 L.Ed. 1292, no matter how unorthodox the underlying religious practices of that organization may appear to some to be, *Follett v. Town of McCormick, S. C.* (1944), 321 U.S. 573, 577, 64 S.Ct. 717, 719[5], 88 L.Ed. 938. Neither does the fact that the plaintiffs might express their religious views at some place other than the public streets, sidewalks and other public areas of Manchester have any consequence. *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448, 457[7].

■ Manchester holds its streets, sidewalks and other public areas in trust for the use of the public, and their use for communicating thoughts between and among citizens is a part of the privileges, immunities, rights and liberties of all citizens of the United States. *Hague v. Committee for Industrial Organization* (1939), 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423, 1436–1437 (headnotes 7, 8). It is not a valid exercise of Manchester's police power to abridge those rights. *Idem.*

■ The prior restraint on the freedom of expression of the plaintiffs from the application of the permit-requirement of Manchester's code against them bears a heavy presumption against its constitutional validity; freedom of speech and of religious expression is the rule, and there must be a justification for making an exception to that rule. *Southeastern Promotions,*

*Ltd. v. Conrad, supra,* 420 U.S. at 557–558, 95 S.Ct. at 1245–1246, 43 L.Ed.2d at 458–459[10], 459[12]. The code provisions, by which the plaintiffs' freedoms are suppressed constitute an overly-broad licensing device administered discretionarily through Manchester's recorder, who, evidently, is an administrative officer. Where, as here, there is danger that freedom of expression will be abridged by a sweeping and improper administrative application of a penal governmental regulation it cannot be tolerated by a liberty-loving people. *Freedman v. Maryland, supra,* 380 U.S. at 56, 85 S.Ct. at 737, 13 L.Ed.2d at 653[1].

*Inter alia,* those provisions invoke preference for localized forms of religion over nonlocalized forms. Manchester cannot regulate preferences for one form of religion over another or others. *Abingdon School District v. Schempp* (1963), 374 U.S. 203, 216, 83 S.Ct. 1560, 1568, 10 L.Ed.2d 844, 854–855 (headnote 4).

■ Therefore, the requested temporary restraining order, as it applies to the individual plaintiffs, will be granted without notice, it appearing from the foregoing that the named defendants are subjecting those plaintiffs, by application to them of the aforementioned provisions of the Manchester code, to the deprivation of their guarantees of freedom of speech and to exercise freely an established religion; as the plaintiffs are on notice that they will be subject to arrest for violation of those provisions, chilling their exercise of such guaranteed rights, their injury therefrom will be immediate and irreparable unless this Court exercises its duty and intervenes.

Before the issuance of the requested order of restraint, the plaintiffs will give security in the sum of $250, which the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party found to have been restrained wrongfully. Rule 65(c), Federal Rules of Civil Procedure.

## ORDER OF RESTRAINT

Accordingly, it hereby is

ORDERED that the defendants City of Manchester, Tennessee; its mayor Mr. Clyde V. Myers; its aldermen Messrs. Fred Baker, John Bramblett, Loyd McMahon, Jr., and Larry Trimmer; its recorder Ms. Nina Moffitt, and its police chief Mr. Jack Robertson, and each of its and their officers, agents, servants, employees and attorneys and all other persons in active concert or participation with it or them, are RESTRAINED temporarily from directly or indirectly enforcing the City of Manchester, Tennessee Municipal Code of 1964, §§ 5–301–5–305, inclusive, against the plaintiffs Ms. Mary Smith, Ms. Sharon Levers, and Mr. Michael Lyons.

It hereby is ORDERED further that the plaintiffs' application for a preliminary injunction will be assigned by the clerk of this Court for hearing in this Court at Greeneville, Tennessee on Good Friday, March 24, 1978, at 10:00 o'clock in the forenoon, or as soon thereafter as this matter may be reached on the Court's calendar.

It hereby is ORDERED further that the above and foregoing order of temporary restraint shall expire at midnight, March 24, 1978, unless it is dissolved theretofore or extended further by order of this Court.

## ON APPLICATION FOR PRELIMINARY INJUNCTION

The Court restrained the defendants, who are officials of the City of Manchester, Tennessee, temporarily from enforcing against the individual plaintiffs the provisions of its Municipal Code, §§ 5–301 – 5–305, inclusive. This relief was granted on the basis of sworn allegations that such enforcement subjected the plaintiffs to the deprivation of her or his federal rights of free speech and the free exercise of religion, Constitution, First Amendment, it being averred in a verified manner that the plaintiffs would be subjected to arrest for violating such provisions. After an evidentiary hearing in Greeneville, Tennessee on Good Friday, 1978, the Court granted the plaintiffs a preliminary injunction, prohibiting the same acts on the part of the restrained defendants, solely for the purpose of maintaining the *status quo* of this litigation pending further consideration. *Blaylock v. Checker Oil Co.,* C.A. 6th (1976), 547 F.2d 962, 965[2].

■ The factual situation developed upon the hearing herein was not precisely as represented to the Court in the verified complaint of the plaintiffs. It now appears that their main object is the solicitation of funds for religious purposes. Absolute prohibition of such solicitation for that purpose cannot be justified. *Cf. Schneider v. Irvington* (1939), 308 U.S. 147, 164, 60 S.Ct. 146, 152, 84 L.Ed. 155, 166 (applying the same rule to the rights of free speech and the freedom of the press). A municipality may protect its citizens from crime and undue annoyance by regulating soliciting, *Hynes v. Mayor of Oradell* (1976), 425 U.S. 610, 616–620, 96 S.Ct. 1755, 1758–1760, 48 L.Ed.2d 243, 250–252[1, 2], [3]; but regulation in this area must be done, and restrictions applied, in such a manner as not to intrude upon the rights of those who apply for permission to solicit funds to exercise freely their religious beliefs, see *Cantwell v. Connecticut* (1940), 310 U.S. 296, 305, 60 S.Ct. 900, 904, 84 L.Ed. 1213, 1218 (headnote 6).[1]

Regulation of this activity was undertaken by the City of Manchester, Tennessee through the aforementioned provisions of its Municipal Code. Thereunder, solicitation of funds for religious purposes was absolutely prohibited unless the solicitor had obtained a permit from Manchester's

---

1. The defendants chose to ignore in their brief the language therein which makes it clear that a valid regulation of solicitation may " * * * not unreasonably obstruct or delay the collection of funds * * * " constitutionally. *Idem.*

city recorder authorizing such solicitation. The impetus for issuing such a permit is placed upon such recorder. That official is required to institute " * * * a reasonable investigation * * * " of an application for such purpose and, unless five prerequisites are found by such recorder affirmatively to exist factually in connection therewith, such official may not issue the permit; but, if all five of those prerequisites are found affirmatively to exist as matters of fact, the recorder is required mandatorily to issue the permit. Code, *supra*, 5–302.

■ Any interpretation placed upon the foregoing provisions by the courts of Tennessee has not been made to appear. However, the current city recorder of Manchester, Tennessee has interpreted that provision to mean that only locally-established churches, operated exclusively for religious purposes and conducting solicitations exclusively among the members of those churches or made at the regular assemblies of " * * * any such established * * * " church, are entitled to permits.[2]

The city recorder of such municipality testified that she denied the plaintiffs a permit to solicit funds for religious purposes · because they did not purport to represent any local (Manchester, Tennessee) church; because they did not represent a church which was (presumably locally) established; that an investigation by the city's chief of police had reflected there had been " * * * problems with this group before * * * "; and that such police chief " * * * felt it was in the best interest of the community * * * "[3] that the permit be denied the plaintiff Ms. Levers.

Whether the courts of Tennessee would give the foregoing provisions the same interpretation is doubtful. However that may be, the administrative interpretation placed upon them by the city recorder of such municipality results in an application of them to the plaintiffs and all other nonlocal church organizations and individuals in such a way that a nonlocal organization or individual could never be granted a permit to solicit funds in Manchester, Tennessee for religious purposes.

This application of its Code provisions by the Manchester, Tennessee official invokes an official preference for localized forms of religion over nonlocalized forms thereof. This is illegal under the Constitution, First Amendment, *Abingdon School District v. Schempp* (1963), 374 U.S. 203, 216, 83 S.Ct. 1560, 1568, 10 L.Ed.2d 844, 854–855 (headnote 4), and amounts to an absolute prohibition of solicitation of religious funds in Manchester, Tennessee by all nonlocal groups and persons, see *Schneider v. Irvington, supra.* Such a sweeping and improper administrative application of a penal governmental regulation by a municipality cannot be tolerated by a people who insist that every person has the right to exercise his or her religious beliefs according to the dictates of his or her own conscience.

■ The plaintiffs have shown a strong probability of success on the merits of this lawsuit; they have shown an irreparable injury; the issuance of a preliminary injunction will not cause substantial harm to others; and the public interest in freedom of religious expression will be served by its continuance. *Mason County Medical Ass'n v. Knebel,* C.A. 6th (1977), 563 F.2d 256, 261[2, 3]. Under those circumstances, the preliminary injunction of March 24, 1978 issued herein will remain in full effect pending further orders of this Court.

---

**2.** " * * * [T]his section shall not apply to any locally established * * * church operated exclusively for * * * religious purposes if the solicitations are conducted exclusively among the members thereof, voluntarily and without remuneration for making such solicitations, or if the solicitations are made in the form of collections or contributions at the regular assemblies of any such established * * * church." Code, *supra*, § 5–301.

**3.** The recorder also mentioned difficulties encountered by the applicants in neighboring communities.

Accordingly, it hereby is

ORDERED that the defendants City of Manchester, Tennessee; its mayor Mr. Clyde V. Myers; its aldermen Messrs. Fred Baker, John Bramblett, Loyd McMahon, Jr., and Larry Trimmer; its recorder Ms. Nina Moffitt, and its police chief Mr. Jack Robertson, and each of its and their officers, agents, servants, employees and attorneys and all other persons in active concert or participation with it or them, are EN-JOINED preliminarily from directly or indirectly enforcing the City of Manchester, Tennessee Municipal Code of 1964, §§ 5–301 —5–305, inclusive, against the plaintiffs Ms. Mary Smith, Ms. Sharon Levers, and Mr. Michael Lyons.

It hereby is ORDERED further that the security in the sum of $250, previously given by the plaintiffs for the payment of such costs and damages as may be incurred or suffered by any party found to have been restrained wrongfully, shall remain posted as security for the issuance of this preliminary injunction. Rule 65(c), Federal Rules of Civil Procedure.

## ON MOTION FOR SUMMARY JUDGEMENT

The motion of the plaintiffs herein of March 24, 1978 to amend their original complaint, and the motion of the defendants herein of April 4, 1978 to amend their original answer, each, hereby is GRANTED. Rule 15(a), Federal Rules of Civil Procedure; *Zenith Radio Corp. v. Hazeltine Research* (1971), 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77, 87 (headnote 3), rehearing denied (1971), 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552. The plaintiffs moved the Court also for a summary judgment on the issue of the constitutionality of the Manchester Municipal Code, §§ 5–301— 5–305, inclusive. See Rule 56(d), Federal Rules of Civil Procedure. The plaintiffs claim that same are unconstitutional on their face because of overbreadth, ambiguity and discretion vested in local officials.

■ Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment only if there are no material issues of fact and the record shows that the moving party is entitled to judgment as a matter of law. *Lashlee v. Sumner,* C.A. 6th (1978), 570 F.2d 107, 111[6]. Although both sides herein appear to agree that this motion involves merely a matter of law, it is well settled in this circuit that a district court should be extremely hesitant to grant summary judgment on important and complex issues, and the adequacy of the record is particularly important where the Court is called upon to decide questions of constitutional law without the benefit of a trial. *Felix v. Young,* C.A. 6th (1976), 536 F.2d 1126, 1134[13] (likewise involving a challenge to municipal ordinances on First Amendment grounds).

A case heard in the federal courts should be determined upon the merits and after an adequate development of the facts. *Oil Chemical & Atom. Wkrs. Union v. Delta Refin. Co.,* C.A. 6th (1960), 277 F.2d 694, 698[4]. Where a case is such that a full inquiry into the facts at trial is advisable for the purpose of clarifying the application of the law, summary judgment is not appropriate. *S. J. Groves & Sons Company v. Ohio Turnpike Commission,* C.A. 6th (1963), 315 F.2d 235, 238[2]. The federal courts must be reluctant to pass upon the constitutionality of a municipal ordinance without the benefit of a trial. *Rescue Army v. Municipal Court* (1947), 331 U.S. 549, 575– 576, 67 S.Ct. 1409, 1423, 91 L.Ed. 1666, 1681–1682.

■ As indicated *supra,* the plaintiffs have made a strong showing of the probability of success on the merits of this lawsuit, in so far as they claim that the defendants are applying the aforementioned municipal ordinances against them in an unconstitutional manner. If, at trial, they establish this contention, then the decision

as to the constitutionality of these ordinances on their face would be unnecessary, and this Court could follow its mandate of not deciding unnecessary constitutional claims. " * * * [C]onstitutional issues affecting legislation will not be determined * * * in advance of the necessity of deciding them; in broader terms than are required by the precise facts; [nor] if the record presents some other ground upon which the case may be disposed of. * * * " *Ibid.*, 331 U.S. at 569, 67 S.Ct. at 1420, 91 L.Ed.2d at 1678 (headnote 2).

The plaintiffs' motion for a summary judgment, therefore, hereby is

OVERRULED.